# United States Court of Appeals
## For the First Circuit

_____

No. 00-1842


WILLIAM S. CUMMINGS AND JOYCE M. CUMMINGS, TRUSTEES OF
W.S. CUMMINGS REALTY TRUST, LUNDQUIST, INC.,
6 WCP, INC., AND ST. THOMAS REALTY FUND, INC.,

Plaintiffs, Appellants,

v.

HPG INTERNATIONAL, INC.

Defendant, Appellee.

_____


APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

_____


Before

Selya, Lynch, and Lipez, Circuit Judges.

_____


   David R. Suny, with whom Susan F. Brand and Cummings Properties, LLC, were on brief, for appellants.
   Jeffrey M. Graeber, with whom Graeber & Davis, P.C., Kenneth H. Zucker, Michael S. Hino, Stuart D. Lurie, and Pepper Hamilton LLP, were on brief, for appellee.

_____

March 22, 2001
_____

**LYNCH, Circuit Judge**.  In the early 1980s, Cummings
Properties bought several roofs manufactured by HPG International.  The
roofs were installed on commercial buildings in Woburn and Burlington,
Massachusetts.  The roofs were composed of unreinforced polyvinyl
chloride membranes and were sold with ten year warranties.  After the
warranty period, Cummings learned that such PVC roofs were subject to
catastrophic failure and, in 1997, inquired of HPG.  HPG recommended
the immediate replacement of all of the roofs.  Before Cummings did so,
one of the roofs shattered and had to be replaced, mid-winter.

Although the roofs had outlasted the warranty periods,
Cummings sued for deceit and negligent misrepresentation, based on oral
statements HPG had made at the time of sale.  Cummings also sued for
violations of Mass. Gen. Laws ch. 93A, saying, inter alia, that HPG at
least had a duty to warn, both before and after the end of the ten year
warranty period.

The district court entered summary judgment for HPG on all
claims.  The case presents numerous issues under Massachusetts
commercial law.

**I.**

On appeal from entry of summary judgment, we summarize the
facts in the light most favorable to plaintiffs.[1]

In 1980, Cummings sought to replace the roof on one of

---

[1]     Plaintiffs include William S. and Joyce M. Cummings, trustees
of the W.S. Cummings Realty Trust; Lundquist, Inc. and 6 WCP, Inc.,
subsidiaries of the Trust; and St. Thomas Realty Fund, Inc., a Trust
affiliate.  Collectively we call them "Cummings."

several commercial buildings in Massachusetts that it owns. Cummings considered a variety of roofing systems on the market, including unreinforced polyvinyl chloride (PVC) membrane roofs manufactured by HPG International. During several meetings between HPG and Cummings, HPG representatives told Cummings that their PVC roof: 1) would last 20 years; 2) would perform better and last the same or longer than other commercial roof systems on the market; and 3) was suitable for use in the variable climate of Massachusetts. In 1980, 1981, and 1983, Cummings purchased unreinforced PVC roofs from HPG for three of their buildings. In 1990, St. Thomas Realty Fund, Inc., a Cummings entity, purchased a building which had had such a HPG roof installed in 1986. Each roof carried with it a ten year warranty, which covered any condition caused by defective material supplied by HPG.

Unreinforced PVC membrane roofs proved to be prone to "shattering," or sudden fragmentation of the membrane. Unreinforced PVC roofs are most likely to shatter in cold weather. HPG learned of the problem as early as 1988, but it is not clear how well known the shattering phenomenon was before that time. By 1990, HPG maintained a log of "Shatter Occurrences" documenting 121 of its roofs that had shattered, at an average age of between eight to ten years.

In 1990, two roofing companies elsewhere that had installed HPG unreinforced PVC membrane roofs contacted HPG about the shattering problem. One asked HPG to join it in sending a notice to owners of

those roofs to warn them of the defect and to recommend remedial action to prevent possible future shattering. The other, a warranty service contractor for HPG, expressed concern about the risk of shattering and urged HPG to issue a statement. It also suggested HPG offer reduced price upgrades on out-of-warranty roofs to prevent shattering. HPG apparently did not act on those suggestions, nor did it notify Cummings of the shattering phenomenon.

Also in 1990, two roofing industry trade groups issued a joint paper documenting the shattering phenomenon occurring in unreinforced PVC roofs and recommending safety and replacement procedures. Another paper, published sometime after 1992, documented problems between 1979 and 1984 with unreinforced PVC roofs such as embrittlement, shrinkage, and impact fractures, although it was unclear whether there were any incidents of shattering during that period.

Cummings learned of the shattering phenomenon around 1997 and contacted HPG, which recommended the immediate replacement of Cummings' unreinforced roofs. Before Cummings had taken any action, however, on December 15, 1997, the roof installed in 1980 shattered, forcing Cummings to replace it on an emergency basis. Cummings has since replaced two of the remaining three roofs as a precaution, and plans to replace the fourth roof soon. HPG has refused to assume financial responsibility for those replacements.

Cummings instituted this action seeking compensation for the

costs associated with replacing the four roofs, claiming that HPG made representations about the useful life and quality of the roofs which, in light of the shattering defect, were false and misleading. Cummings says it relied on HPG's false representations and, since the roofs did not last 20 years or perform better than other roofs, the fact that the warranties have expired should not bar its claims. Cummings also alleges that HPG committed unfair practices in violation of Massachusetts' consumer protection law, Mass. Gen. Laws ch. 93A, § 11, because HPG failed to warn it of the shattering defect, which HPG allegedly knew about by 1988, while Cummings' warranties were still in effect.

The district court granted summary judgment in favor of HPG, concluding that HPG's representations were non-actionable statements of opinion, and also finding that there was no evidence HPG knew the statements were false at the time they were made. The court held that HPG had not violated Chapter 93A by failing to warn Cummings about the risk of shattering, if a duty to warn existed at all. HPG was also granted summary judgment on Cummings' claim based on the roof owned by plaintiff St. Thomas Realty, as the court found no evidence that St. Thomas Realty's predecessor was the recipient of any false representations.

## II.

We review de novo the district court's grant of summary

judgment.  Thomas v. Eastman Kodak Co., 183 F.3d 38, 47 (1st Cir.

1999), cert. denied, 528 U.S. 1161 (2000).  Summary judgment is

appropriate if "the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." Id. (quoting Fed.

R. Civ. P. 56(c)).  Massachusetts law governs.

A.   The Misrepresentation Claims

At first blush, it seems odd to permit an action for either

deceit  or  negligent  misrepresentation  where  the  supposed

misrepresentation is the subject of an express warranty (which

disclaims all other warranties by its terms) and it is clear there was

no breach of that warranty.  In general, under Massachusetts law, if

"the contract was fully negotiated and voluntarily signed, [then]

plaintiffs may not raise as fraudulent any prior oral assertion

inconsistent with a contract provision that specifically addresses the

particular point at issue." Starr v. Fordham, 648 N.E.2d 1261, 1268

(Mass. 1995) (quoting Turner v. Johnson & Johnson, 809 F.2d 90, 97 (1st

Cir. 1986)).

But as to deceit actions, Massachusetts courts, for public

policy reasons, have long held that a party cannot induce a contract by

fraudulent misrepresentations and then use contractual devices to

escape liability.  See Bates v. Southgate, 31 N.E.2d 551, 558 (Mass.

-7-

1941) ("[C]ontracts or clauses attempting to protect a party against the consequences of his own fraud are against public policy and void where fraud inducing the contract is shown . . ..").  Here, Cummings claims that it would not have bought the roofs but for HPG's misrepresentations, and so its deceit claim, based on HPG's allegedly fraudulent misrepresentations, is not barred by the existence of an express warranty.

As for Cummings' negligent misrepresentation claim, in some circumstances an express warranty will operate as a bar to recovery. Where the legality of the bargaining process is not at issue, a party cannot avoid its contractual obligations by seeking recovery for negligent misrepresentation.  See Sound Techniques, Inc. v. Hoffman, 737 N.E.2d 920, 927 (Mass. App. Ct. 2000) (declining to "ignore our general policy of upholding freedom to contract by allowing [plaintiff] to avoid a contractual disclaimer that it agreed to, uninfluenced by any fraud or other egregious or intentional misbehavior on [defendant's] part").  The express warranty in this case does not contain an integration clause like the one in Sound Techniques, which stated that the party "has not been influenced to enter into this transaction nor has [it] relied upon any warranties or representations not set forth in this instrument." Id. at 922.[2]  We do not, however,

_____

[2]     Indeed, the record only includes warranties for two of the four roofs that are the subject of this litigation.  Those warranties purport to disclaim all other warranties, in general terms, but do not

-8-

explore whether this difference in warranty language matters under state law, as HPG has not argued this point.

1.  Opinion v. Fact

There is an important threshold determination for any misrepresentation claim, be it for deceit or for negligent misrepresentation: only statements of fact are actionable; statements of opinion cannot give rise to a deceit action, McEneaney v. Chestnut Hill Realty Corp., 650 N.E.2d 93, 96 (Mass. App. Ct. 1995), or to a negligent misrepresentation action, Logan Equip. Corp. v. Simon Aerials, Inc., 736 F. Supp. 1188, 1199 (D. Mass. 1990) Cummings argues that the district court erred in concluding that HPG's representations about its roofs were non-actionable statements of opinion.  As to the first statement -- that the roof would last twenty years -- we do not consider it to be a statement of opinion.  The second statement, the supposed superiority of the PVC product, does fall in the opinion category, as normal commercial puffing.  HPG's statement that the roof was suitable for the New England Climate is close to the line between the two categories, but it is at least arguably more like a statement of fact than of opinion.

To draw the difficult distinction between a statement of fact and a statement of opinion, Massachusetts courts have looked to the

---

contain any type of integration clause disclaiming any representations or warranties not set forth in the agreement.

Restatement (Second) of Torts, which provides that a representation is one of opinion "if it expresses only (a) the belief of the maker, without certainty, as to the existence of fact; or (b) his judgment as to quality, value, authenticity, or other matters of judgment." Restatement (Second) of Torts § 538A (1977), quoted in McEneaney, 650 N.E.2d at 96. Statements touting the superlative quality of an item, such as "mint condition" or "prime merchandise" are considered mere "puffing" or "seller's talk," non-actionable statements of opinion. Greenery Rehab. Group, Inc. v. Antaramian, 628 N.E.2d 1291, 1293 (Mass. App. Ct. 1994); see also Powell v. Rasmussen, 243 N.E.2d 167, 168 (Mass. 1969)(statements of mere opinion, estimate, or judgment cannot give rise to deceit action).

In contrast, statements that are susceptible of actual knowledge can give rise to a claim of deceit, if those statements are false. Zimmerman v. Kent, 575 N.E.2d 70, 74-75 (Mass. App. Ct. 1991). For example, a statement by the builder of a house that "there would be no water in the cellar" was deemed an actionable misrepresentation because it was susceptible of the builder's actual knowledge, Pietrazak v. McDermott, 167 N.E.2d 166 (Mass. 1960), as was a false representation by a corporate agent about a corporation's net worth, Gopen v. American Supply Co., 407 N.E.2d 1255, 1257 (Mass. App. Ct. 1980). Even a statement that in form is one of opinion "may constitute a statement of fact if it may reasonably be understood by the recipient

-10-

as implying that there are facts to justify the opinion or at least that there are no facts that are incompatible with it." McEneaney, 650 N.E.2d at 96. Here, HPG's representation that their roofs would last twenty years was specific and verifiable, not a mere expression of opinion or estimate. That statement was susceptible of HPG's actual knowledge, and, even if opinion, indicated that HPG, the manufacturer of the roofs, knew facts to justify its statement. Similarly, HPG's statement that the roofs were suitable for the Massachusetts climate is at least arguably a statement of fact.

2. Elements of Deceit

The borderline between what is an action for deceit and what is an action for negligent misrepresentation is unclear under Massachusetts case law. In an action for deceit under Massachusetts law, a plaintiff must show that the defendant: made a false representation of material fact; for the purpose of inducing reliance; and that plaintiff relied upon the representation to his or her detriment. Danca v. Taunton Sav. Bank, 429 N.E.2d 1129, 1133 (Mass. 1982); Snyder v. Sperry and Hutchinson Co., 333 N.E.2d 421, 428 (Mass. 1975). Proof of intent to deceive is not required, so long as there is proof of a false representation of fact susceptible of the speaker's knowledge. Snyder, 333 N.E.2d at 428. The uncertainty has to do with what role the speaker's knowledge of the falsity plays.

Many Massachusetts cases say that an element of deceit is

-11-

that the speaker "made a false representation of a material fact <u>with</u> <u>knowledge</u> of its falsity."  <u>Danca</u>, 429 N.E.2d at 1133 (emphasis added); <u>see</u> <u>also</u> <u>Slaney</u> v. <u>Westwood Auto, Inc.</u>, 322 N.E.2d 768, 779 (Mass. 1975) (comparing common law fraud to Chapter 93A claim); <u>Barrett Assoc.</u> v. <u>Aronson</u>, 190 N.E.2d 867, 868 (Mass. 1963); <u>Kilroy</u> v. <u>Baron</u>, 95 N.E.2d 190, 191 (Mass. 1950); <u>Rood</u> v. <u>Newberg</u>, 718 N.E.2d 886, 892 (Mass. App. Ct. 1999); <u>accord</u> <u>Borden</u> v. <u>Paul Revere Life Ins. Co.</u>, 935 F.2d 370, 379 (1st Cir. 1991).  But other deceit cases say "plaintiffs need not prove that [defendant] knew his statement to be false" so long as there is proof that the representation was false and susceptible of actual knowledge.  <u>Nickerson</u> v. <u>Matco Tools Corp.</u>, 813 F.2d 529, 530 (1st Cir. 1987); <u>see</u> <u>also</u> <u>VMark Software, Inc.</u> v. <u>EMC Corp.</u>, 642 N.E.2d 587, 593 n.9 (Mass. App. Ct. 1994) (speaker need not know statement is false if fact represented is susceptible of actual knowledge); <u>Zimmerman</u>, 575 N.E.2d 70 at 74 (same); <u>Acushnet Fed. Credit Union</u> v. <u>Roderick</u>, 530 N.E.2d 1243, 1244-45 (Mass. App. Ct. 1988) (same).

At the very least, there is a lack of clarity in Massachusetts case law. <u>See</u> <u>In re Friedlander</u>, 170 B.R. 472, 476-78 (Bankr. D. Mass. 1994) (noting confusion).  The confusion may stem from the mixing of the concept of knowledge with the concept of intent to deceive, or from use of language without an effort to distinguish which sort of misrepresentation is alleged.  The Supreme Judicial Court has not, as best we can tell, addressed this question.  But it has referred

to the Restatement (Second) of Torts in this area, <u>see</u> <u>Robertson</u> v.

<u>Gaston Snow & Ely Bartlett</u>, 536 N.E.2d 344, 349 (Mass.) (intentional

misrepresentation), <u>cert denied</u>, 493 U.S. 894 (1989); <u>Rasmussen</u>, 243

N.E.2d at 168-69 (same); <u>Danca</u>, 429 N.E.2d at 1134 (negligent

misrepresentation), so we will use those Restatement definitions.

Since Massachusetts considers deceit to be a variety of

fraud, we utilize the definition in Restatement (Second) of Torts §

526:

> A misrepresentation is fraudulent if the maker
> (a) knows or believes that the matter is not as
> he represents it to be, (b) does not have the
> confidence in the accuracy of his representation
> that he states or implies, or (c) knows that he
> does not have the basis for his representation
> that he states or implies.

"Knowledge" for the purpose of showing fraud is established by any of

these three conditions. A claim of deceit has been categorized as an

intentional tort, <u>Mohr</u> v. <u>Com</u>, 653 N.E.2d 1104, 1115 n.16 (Mass. 1995);

<u>G & B Assoc.</u> v. <u>Springfield</u>, 653 N.E.2d 203, 205 (Mass. App. Ct. 1995).

As will be discussed later, "[m]ere negligence in discovering the

falsity before making the representation is not sufficient for an

action in tort for deceit, but it is enough for an action in

negligence." 37 J. Nolan & L. Sartorio, Massachusetts Practice § 143

at 240-41 (2d ed. 1989). A defendant who makes a false statement may

be liable for deceit if he implicitly conveyed that he had knowledge of

the represented fact. <u>See</u> <u>McEneaney</u>, 650 N.E.2d at 96; Restatement

-13-

(Second) of Torts § 526.

The issue is whether, at the time HPG made the statements, HPG knew that the statements were false within the Restatement test. See Zimmerman, 575 N.E.2d at 74. Here, Cummings has failed to offer evidence that HPG had any basis for knowledge that the statements, at the time they were made, were false, a failure that is fatal to Cummings' deceit claim. See id. at 74-75.

The latest that HPG could have made any allegedly false representations was 1986, assuming arguendo that Cummings can maintain a claim based on the 1986 roof on a building sold to St. Thomas Realty in 1990, see infra. Cummings offers a single article, dated 1986, reporting problems (other than shattering) with PVC roofs in the early 1980s, and admits that it has no basis to impute knowledge of that report to HPG at the time of the sales. The letters and the other articles Cummings relies on post-date the 1986 sale, as does the shatter log, which shows that by 1990, HPG had tracked claims of 121 shattered roofs. There is simply no evidence to suggest that HPG knew or should have known that its statements about its product were false, in the Restatement sense, when HPG made the statements.

3. Negligent Misrepresentation

Cummings also pursues a negligent misrepresentation claim, which, under Massachusetts law, requires it to prove that HPG provided it with false information and "with failure to exercise reasonable care

-14-

or competence in obtaining or communicating the information." <u>Nota Constr. Corp.</u> v. <u>Keyes Assoc.</u>, 694 N.E.2d 401, 405 (Mass. App. Ct. 1998).

a. Economic Loss Doctrine

The district court dismissed the negligent misrepresentation claim, predicting that Massachusetts courts would apply the "economic loss doctrine" in a new context -- to preclude claims of negligent misrepresentation about statements as to the viability of products made in a commercial setting to induce the purchase of products where the product is subject to warranties. The district court relied on the thoughtful analysis of the question contained in <u>Sebago, Inc.</u> v. <u>Beazer East, Inc.</u>, 18 F. Supp. 2d. 70 (D. Mass. 1998).

In the context of ordinary negligence claims in tort actions, the Supreme Judicial Court has held that "purely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage." <u>FMR Corp.</u> v. <u>Boston Edison Co.</u>, 613 N.E.2d 902, 903 (Mass. 1993) (rejecting claim that negligent repair of electric lines caused power outages which caused loss of profits); <u>accord</u> <u>Garweth Corp.</u> v. <u>Boston Edison Co.</u>, 613 N.E.2d 92, 93-94 (Mass. 1993) (rejecting claim that negligent oil spill caused damages for delay in ability to complete contract work). The SJC thus aligned itself with the majority rule as to the economic loss doctrine and cited a Supreme Court case which held that where a commercial product

-15-

injures itself and nothing or no one else, there is no need to create a product liability cause of action independent of contract obligation. See FMR Corp., 613 N.E.2d at 903 (citing East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 871-75 (1986)).

On the other side of the issue, as the district court here and in Sebago recognized, Danca suggests that the economic injury rule does not apply to bar negligent misrepresentation claims. Danca recognized a cause of action against a bank that made misrepresentations that led to plaintiffs proceeding to a sale which they otherwise would have cancelled. Danca, 429 N.E.2d at 1134. The court handled the overlap between this tort and contractual obligations by using special damages rules. Id. Danca can perhaps be distinguished, as Sebago suggests, as a case in which the contract obligation and the tort liability were not entirely coextensive because the misrepresentation claim stemmed from the provision of services, and not a defective product. See Sebago, 18 F. Supp. 2d at 96. But in 1998 the Massachusetts Appeals Court flatly stated, without drawing distinctions, that "[a]n exception to the [economic loss] doctrine permits recovery for economic losses resulting from negligent misrepresentation." Nota, 694 N.E.2d at 405.

It is not clear to us which route Massachusetts will take as to the application of the economic loss doctrine to negligent misrepresentation claims. It may choose the FMR model or it may choose

-16-

the Danca model, or do something else.  As a result, we turn to a more traditional form of analysis, which disposes of the claim.

b.   Elements of Negligent Misrepresentation

Looking to the Restatement (Second) of Torts definition, Massachusetts courts have held that in order to recover for negligent misrepresentation, a plaintiff must show that the defendant: (1) in the course of its business, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance upon the information, and (6) that it failed to exercise reasonable care or competence in obtaining or communicating the information.  Fox v. F & J Gattozzi Corp., 672 N.E.2d 547, 551 (Mass. App. Ct. 1996) (citing Restatement (Second) of Torts § 552(1) (1977)); see also Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n, 142 F.3d 26, 41 (1st Cir. 1998).  Although courts sometimes analyze negligent misrepresentation claims and deceit claims together, the degree of culpability a plaintiff must prove to establish liability for negligent misrepresentation is different, and less demanding, than that to establish liability for deceit.  See Sound Techniques, 737 N.E.2d at 926 ("Fraud and [negligent misrepresentation] embody two different states of mind . . ..") (quoting Snyder v. Lovercheck, 992 P.2d 1079, 1088 (Wy. 1999)); W. Page Keeton, ed., Prosser and Keeton on Torts, § 107 at 742 (5th ed. 1984) (scienter element distinguishes deceit action

-17-

from negligent misrepresentation action).

In general, Massachusetts courts treat negligent misrepresentation claims more as negligence actions than deceit actions, focusing on the degree of care exercised by the speaker in making the statement. See Danca, 429 N.E.2d at 1133 (finding conduct and words "negligently made" gave rise to negligent misrepresentation claim). For a negligent misrepresentation claim, courts ask simply whether the speaker was negligent in failing to discover the falsity of his or her statements. See id.; Prosser and Keeton on Torts, § 107 at 745 (representation may be negligent where there is a "lack of reasonable care in ascertaining the facts, or in the manner of expression, or absence of skill and competence required by a particular business or profession").

Even under a negligence standard, however, Cummings has failed to provide any evidence that HPG could have known that the representations were false when made. The future performance of the roofs cannot alter what HPG knew at the time the statements were made. Accordingly, Cummings' negligent misrepresentation claim, like its deceit claim, must fail. See Lawton v. Dracousis, 437 N.E.2d 543, 547 (Mass. App. Ct. 1982) (rejecting negligent misrepresentation claim where no evidence speaker had knowledge of undisclosed facts).

B.  Chapter 93A, § 11 Claims

Cummings also argues that the district court's summary

judgment was improper on its claims under Mass. Gen. Laws ch. 93A, §§ 2, 11, because HPG's misrepresentations and failure to warn it of the shatter defect constitute actionable "unfair or deceptive acts or practices." Chapter 93A is broad in scope and does not catalogue the type of conduct falling within its prohibition; instead, it references the interpretations of unfair acts and practices contained in section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1). See Mass. Gen. Laws ch. 93A, § 2(a). Conduct is unfair or deceptive if it is "within at least the penumbra of some common-law, statutory, or other established concept of unfairness" or "immoral, unethical, oppressive, or unscrupulous." PMP Assoc., Inc. v. Globe Newspaper Co., 321 N.E.2d 915, 917 (Mass. 1975), quoted in Cambridge Plating Co., Inc. v. Napco, Inc., 85 F.3d 752, 769 (1st Cir. 1996). The context in which the unfair act took place is of great import. Kattar v. Demoulas, 739 N.E.2d 246, 257 (Mass. 2000).

1. Unfair Misrepresentations

Cummings argues that its failure to sustain deceit and negligent misrepresentation claims should not prevent it from establishing a Chapter 93A violation based on misrepresentation. While it is true that an action under Chapter 93A need not articulate every element of a common law tort claim in order to survive, see Massachusetts Farm Bureau Fed'n, Inc. v. Blue Cross, Inc., 532 N.E.2d 660, 664 (Mass. 1989), a defendant's allegedly unfair conduct "must at

least come within shouting distance of some established concept of unfairness," Massachusetts School of Law, 142 F.3d at 42. Here, Cummings' Chapter 93A claim is not even within earshot of a misrepresentation claim. There can be no claim of unfairness based on a misrepresentation where, as we previously found, Cummings has failed to show HPG made any deceitful or even negligently false statements.

## 2. Duty to Warn

Cummings' allegation of unfairness based on HPG's failure to warn is less easily dispatched.[3] It is uncontested that during at least some of Cummings' warranty periods, HPG knew that there was a substantial occurrence of shattering in its unreinforced PVC roofs. By some time in 1990, HPG had sufficient notice that the roofs were prone to catastrophic failure. At that time, three of the roofs were still under warranty and one was not. Yet HPG said nothing. The question is whether Cummings has created a jury question as to whether HPG's silence rises to the level required to show unfair or unscrupulous behavior actionable under Chapter 93A.

Like the district court, we reject Cummings' argument that HPG was under a continuing post-sale duty to warn based on Vassallo v.

_____

[3] Although failure to warn sounds in tort, Massachusetts courts have generally held that the economic loss doctrine does not bar recovery in actions brought under Chapter 93A. See Anastasi Bros. Corp. v. Massachusetts Convention Ctr. Auth., 1993 WL 818553, at *3 (Mass. Super. Nov. 1, 1993); cf. Logan Equip., 736 F. Supp. at 1203 (allowing Chapter 93A claim based on misrepresentations despite finding economic loss doctrine barred negligence claim).

-20-

Baxter Healthcare Corp., 696 N.E.2d 909 (Mass. 1998). That case involved claims under the more forgiving consumer standard contained in section 9 of Chapter 93A, where the defective product resulted in personal injury. Id. at 924. As the district court noted, to extend the rule in Vassallo to claims between commercial parties under section 11 would be an unwarranted expansion of liability under Chapter 93A.

We analyze this failure to warn claim under section 11 of Chapter 93A first by seeing if Massachusetts case law dealing with failure to warn liability would apply here, thus, by analogy, indicating the existence of a 93A claim. Cf. Cambridge Plating, 85 F.3d at 769 (referring to common law torts to determine whether conduct gives rise to Chapter 93A liability). A post-sale duty to warn of a defective product only arises under Massachusetts law if the product was negligently designed as originally sold. See Williams v. Monarch Machine Tool Co., 26 F.3d 228, 232 (1st Cir. 1994); see also Cigna Ins. Co. v. Oy Saunatec, Ltd., 2001 WL 118896, *8 (1st Cir. Feb. 15, 2001). In Cigna, applying Massachusetts law, we upheld a damages award for failure to warn where plaintiff showed that the defective product failed to conform to industry safety standards at the time it was sold and later required modification. See id. at *9. Here, Cummings has offered no direct evidence that HPG's roofs were negligently designed. We are reluctant to reason backwards to that conclusion from the mere fact of failure. In addition, there are Massachusetts cases saying

-21-

that the purchaser of a manufactured product who claims as damages only economic loss or damages caused by the product itself cannot maintain a claim for negligent design (where a warranty action is available). E.g., Marcil v. John Deere Indus. Equip., 403 N.E.2d 430, 434-35 (Mass. App. Ct. 1980).

That analysis does not necessarily dispose of the unfairness question under Chapter 93A. Indeed, there is an argument, which is not frivolous, that HPG should have notified Cummings about the risk of the roofs shattering, and that its failure to do so was unethical and reaches the level of "unscrupulousness" required in an action under section 11 of Chapter 93A. The sudden collapse of a roof in a commercial building could easily lead to damage to the building's tenants, and there are arguably good public policy reasons to support a duty to warn.

Even assuming arguendo the existence of such a duty, however, Cummings has not shown that HPG's failure to warn it about the roof defect caused it any actual damage. It is not enough for Cummings to say that had it known of the defect it would not have purchased the roofs; that argument belongs with the misrepresentation claims. To prove that HPG's failure to warn was actionable unfair conduct, Cummings must produce some evidence of injury that directly resulted from HPG's silence. There is no evidence of a missed opportunity to reinforce the roofs less expensively than replacing them, or some

-22-

damages, other than to the roof itself, that could have been avoided. See McCann v. Davis, Malm & D'Agostine, 669 N.E.2d 1077, 1079 (Mass. 1996) (upholding dismissal of Chapter 93A claim where plaintiff failed to show that defendant's negligence caused its damages and failed to identify unfair conduct); Weeks v. Harbor Nat'l Bank, 445 N.E.2d 605, 607 n.2 (1983) ("[D]amages are an essential element of the cause of action" under Mass. Gen. Laws ch. 93A, § 11.). Indeed, Cummings does not even argue for such damages. Rather, it seeks the replacement cost for the roofs. But the roofs were warranted for only ten years and lasted that long, and longer, without failing. There was, to be sure, a risk that they would fail within that period, but they did not. And Cummings did have notice before the last one failed. We see no damages from the failure to warn. Summary judgment on the Chapter 93A claims was appropriate.

Finally, we note that Cummings is not entitled to attorneys' fees for its claims that HPG violated section 11 of Chapter 93A. Attorneys' fees are available under section 11 if a plaintiff sustained a loss of "money or property" due to a defendant's unfair practice. Mass. Gen. Laws ch. 93A, § 11; see also Jet Line Servs., Inc. v. American Employers Ins. Co., 537 N.E.2d 107, 114 (Mass. 1989). Here, Cummings has not shown any such loss due to HPG's failure to warn, and as the Massachusetts Supreme Judicial Court has held, where a plaintiff fails to prove any damages, "relief solely in the form of attorneys'

fees may not be had."  <u>Jet Line</u>, 527 N.E.2d at 115.

C.  St. Thomas Realty's Claim

We need not review that part of the district court's decision relating to the roof of plaintiff St. Thomas Realty, as that claim is premised on Cummings' failed misrepresentation and Chapter 93A claims.

**III.**

For these reasons, the judgment of the district court is <u>affirmed</u>.  Costs are awarded to defendant.