**SUPERIOR KITCHEN DESIGNS, INC., Plaintiff,**

v.

**VALSPAR INDUSTRIES (U.S.A.), INC., Thomas Goll, and The Raybern Company, Defendants.**

No. CIV.A. 00–40084–CBS.

United States District Court, D. Massachusetts.

April 30, 2003.

Keith A. Minoff, Patrick J. Markey, Robinson, Donovan, Madden & Barry, Springfield, for Superior Kitchen Designs, Inc., Plaintiff.

Kenneth H. Inskeep, Barnes & Thomberg, Karen S. Horseman, Barnes & Thornburg, Indianapolis IN, Thomas C. Federico, Grace V. Bacon, Morrison, Mahoney, & Miller LLP, Boston, for Valspar Industries (U.S.A.), Inc., The Raybern Company, Defendants.

### MEMORANDUM AND ORDER

SWARTWOOD, United States Magistrate Judge.

#### Nature of the Proceedings

With the consent of the parties, this case has been referred to me for trial and entry of final judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73. This Memorandum and Order addresses the Defendant's Motion For Summary Judgment (Docket No. 34) [1].

#### Nature of the Case

The Plaintiff, Superior Kitchen Designs, Inc. ("Superior" or "Plaintiff"), seeks to recover against Valspar Industries (U.S.A.), Inc. ("Valspar" or "Defendant") [2],

---

1. Also pending are: Motion to Extend Time Within Which To Conduct Discovery (Docket No. 26); Defendant's Motion To Compel (Docket No. 28); and Plaintiff, Superior Kitchen Designs, Inc.'s, Motion To Amend Scheduling Order To Permit Additional Discovery (Docket No. 42). In light of my ruling on Valspar's motion for summary judgment, I am reserving decision on these motions and

ordering that the parties appear before me for a motion hearing/status conference to discuss these motions and to set a new schedule for the completion of discovery and trial of this case.

2. Valspar Industries (USA), Inc. is the successor in interest of Lilly Industries (USA), Inc., which is the successor in interest to Guards-

Thomas Goll ("Mr.Goll") and The Raybern Company ("Raybern") for breach of express warranty, breach of implied warranty, negligence and violation of the Massachusetts Consumer Protection Act (Mass. Gen.L. Ch. 93A).[3] Raybern has filed cross-claims against Valspar for statutory contribution (under Mass.Gen.L., ch. 231B), common law indemnification and implied indemnification.

*Facts*

The following facts are uncontroverted, or are stated in a light most favorable to Superior, as the non-moving party.

1. Superior designs, manufactures and sells wooden cabinetry. *Pl's Opp. To Valspar Industries (U.S.A.), Inc.'s Mot. For Sum. J.* (Docket No. 36) (*"Pl's Opp."*), *Ex. 1* (Affidavit of Rheal McCaie) (*"McCaie Aff."*), at ¶ 5.

2. Valspar designs, manufactures and sells varnishes and other finishes for use on wooden cabinets. *Id.*, at ¶ 6.

3. Valspar's products have been distributed in Massachusetts by Raybern and Mr. Goll. *Id.*, at ¶ 7.

4. Superior began purchasing and using Valspar products to stain and finish cabinets in 1992. *Id.*, at ¶ 8. Specifically, Superior began using Superguard Plus, Product No. 971–0032 (top coat); Superguard Catalyst, sealer, Product No. 979–1015; and Lime Wiping Stain, Product No. 925–0079. *Id.*, at ¶ 9.

man Products, Inc. At the relevant time periods, the name of the applicable company may have been one of the predecessors in interest to Valspar. However, for ease of reference, I will simply refer to Valspar as if it was the company which was in existence at all relevant time periods and for all relevant events.

**3.** Superior had also asserted a claim against Valspar for breach of contract (Count IV).

5. Superior actually purchased the products from Raybern. *Second Amended Complaint and Demand for Jury Trial* (Docket No. 23) (*"Complaint"*), at ¶ 12.

6. In 1995, Superior received some complaints from its customers concerning the yellowing of cabinets it had coated with the aforementioned Valspar products. *McCaie Aff.*, at ¶ 10. Superior submitted a cabinet door which had yellowed to Valspar for analysis. *Id.*, at ¶ 11.

7. Superior also received complaints about peeling and flaking. *Pl's Supp. Mem. In Opp. To Def., Valspar Industries (U.S.A.), Inc's Mot. For Sum. J.* (Docket No. 48), *Ex. 1 (Affidavit of Rheal McCaie)* (*"Supp. McCaie Aff."*), at ¶ 6.

8. Thereafter, on July 31, 1995, Ronald Knoper, a senior chemist with Valspar, acknowledged the yellowing and said that Superguard should not be used over white paint or white stain. *Pl's Opp.*, at *Ex. 2.*

9. Prior to receiving Mr. Knoper's letter, Superior had never been advised not to use these products over white paint or white stain. *McCaie Aff.*, at ¶ 13. No one told Superior that the these products might yellow. *Id.*, at ¶ 15.

10. Neither the technical information sheets which Superior received with the Superguard products, nor the labels of the Superguard products stated that such products were subject to discoloration or that they should not be used over white finishes. *McCaie Aff.*, at ¶ 16.; *Pl's Opp.*, at *Exs. 3 & 4*

However, Superior has conceded that it does not have a breach of contract claim against Valspar. *See Pl's Opp. To Valspar Industries (U.S.A.), Inc.'s Mot. For Sum. J.* (Docket No. 36), at p. 4. Therefore, summary judgment shall enter for Valspar on Count IV (Breach of Contract) of the Second Amended Complaint.

11. Mr. Knoper recommended that Superior switch to Valspar's Super Chemveer products or its new pre-catalyzed sealer 14–7091 and topcoat 14–7092. *Pl's Opp.,* at *Ex. 2.*

12. In accordance with Mr. Knoper's suggestion, in August 1995, Superior began using Valspar's Super Chemveer (top coat); Product No. 14–0791 (sealer); and Product No. 14–7092 (top coat) over Lime Wiping Stain, Product No. 925–0079. *McCaie Aff.,* at ¶ 17.

13. In 1998, Superior began receiving complaints of yellowing from customers whose cabinets had been treated with the products recommended by Mr. Knoper. *Id.,* at ¶ 18.

14. Promotional materials which had been supplied to Superior concerning the Super Chemveer products and the lacquer seal touted their non-yellowing qualities and recommended them for use over clear top coats and/or sealers and enamels. *McCaie Aff.,* at ¶¶ 19, 20; *Pl's Opp.,* at *Exs. 5,6,7 & 8.* Additionally, a Valspar catalogue referred to the white Pre-catalyzed lacquer as "clear and non-yellowing". *McCaie Aff.,* at ¶ 21; *Pl's Opp.,* at *Exs. 9 & 10.*

15. Valspar added a UV absorber to Product No. 14–7092 in 1998 and to Super Chemveer in 1999. *Pl's Opp., Ex. 11* (Valspar's Responses To Pl's First Set of Interrogatories), at Response to Interrogatory No. 9. Valspar did so because UV absorber had been added to these products at the request of original equipment manufacturers who made custom orders for these products. When it decided to add the UV absorber to these products, Valspar simply adopted the percentage of UV absorber it had been adding to the custom orders. *Id.*

16. Valspar's own tests results showed that Superguard yellowed severely after exposure to UV light for forty-eight hours. *Pl's Opp.,* at *Ex. 12.* The report concerning those tests was issued in November 1995. *Pl's Second Supp. Mem. In Opp. To Def. Valspar Ind.(U.S.A.), Inc.'s Mot. For Sum. J.* (Docket No. 51).

17. Superior has had to make repairs to cabinets on which it had used Valspar products and expects to have to make additional repairs to other cabinets on which it used the Valspar products. *McCaie Aff.,* at ¶¶ 24, 25–26.

18. In some cases, Superior was able to sand and refinish the cabinet faces. In other cases, it was not practicable to remove all of the damaged finish. In those cases, Superior replaced the entire cabinet or cabinet system. *McCaie Supp. Aff.,* at ¶¶ 9–10.

### Standard of Review

Summary judgment is appropriate when the record indicates that "there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. " 'A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law.' " *Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52 (1st Cir.2000)(internal citations omitted) (quoting Fed.R.Civ.P. 56(c) and *Sanchez v. Alvarado,* 101 F.3d 223, 226 (1st Cir.1996)).

### Discussion

Valspar asserts that it is entitled to summary judgment with respect to all of the claims asserted against it by Superior. Specifically, Valspar asserts that it is entitled to summary judgment on: Superior's express and implied warranty claims because there is a lack of privity between the

parties and therefore, Superior's claims are barred by the economic loss doctrine; any breach of warranty claims asserted by Superior which accrued prior to April 20, 1996, because such claims are barred by the applicable statue of limitations; Superior's Chapter 93A claim, because it has not breached a warranty to Superior; and Superior's negligence claim, because such claim is barred by the economic loss doctrine. I will address each of these assertions in turn.

*Whether Valspar is Entitled to Summary Judgment on Superior's Breach of Warranty Claims*

Superior has asserted claims against Valspar for breach of an express warranty and breach of the implied warranty of merchantability. Superior seeks damages for costs of repair to cabinets on which it used the Valspar products, cost of replacement of such cabinets, diminished value and lost business. Valspar asserts that Superior's warranty claims must fail because all such losses are purely economic in nature and therefore, are barred under Massachusetts law which prohibits a commercial purchaser, such as Superior, from bringing breach of warranty claims for economic loss against a manufacturer where there is a lack of privity between the two entities.[4] Superior concedes that because it did not purchase the products at issue directly from Valspar it is not in "privity" with Valspar. However, Superi-or argues that since Valspar's products damaged "other property", *i.e.,* the cabinets on which they were used, its losses cannot be characterized as "economic" and therefore, its warranty claims sound in negligence and are not subject to a privity requirement.

The Massachusetts Supreme Judicial Court has held that "a breach of ... warranty claim asserted to recover economic loss (the cost of repairs and lost profits) is contract-based, and, in this State when economic loss is the only damage claimed, recovery is not allowed in tort-based strict liability." *Bay State–Spray & Provincetown Steamship, Inc. v. Caterpillar Tractor Co.,* 404 Mass. 103, 533 N.E.2d 1350 (1989). "Massachusetts courts have defined economic loss as 'damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits without any claim of personal injury or damage to other property.'" *Sebago, Inc. v. Beazer East, Inc.,* 18 F.Supp.2d 70, 89 (D.Mass.1998)(quoting *Marcil v. John Deere Indus. Equip. Co.,* 9 Mass.App.Ct. 625, 630 n. 3, 403 N.E.2d 430 (1980)); *see also Aldrich v. ADD Inc.,* 437 Mass. 213, 770 N.E.2d 447 (2002)(longstanding rule in Massachusetts is that purely economic losses are unrecoverable in strict liability actions in absence of personal injury or property damage).

---

**4.** Massachusetts law provides that "[l]ack of privity between the plaintiff and the defendant shall be no defense in any action brought against the manufacturer ... of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant if the plaintiff was a person whom the manufacturer ... might reasonably have expected to use, consume or be affected by the goods." Mass.Gen.L. Ch. 106, § 2–318. In *Sebago, Inc. v. Beazer East, Inc.,* 18 F.Supp.2d 70 (D.Mass.1998), this Court (Wolf, D.J.), after reviewing numerous holdings by the Massachusetts Supreme Judicial Court on related issues, held that Section 2–318's relaxed privity requirement is limited to suits against remote manufacturers by plaintiffs that purchased *consumer goods,* that is, it does not apply to a commercial plaintiff alleging a breach of warranty action against a manufacturer. Thus, Judge Wolf concluded that commercial plaintiffs must still allege and prove privity to maintain a breach of warranty claim against a commercial manufacturer. *Id.,* at 97–99.

■ Superior purchased Valspar top coats, sealers and stains and used them on cabinets which Superior sold to its customers. After a period of time, the Valspar products on the cabinets yellowed. With respect to some of these cabinets, Superior sanded down the cabinets and reapplied a new top coat, sealer and stain. With respect to others, Superior replaced the entire cabinet. I fail to see how Superior's costs incurred in removing the yellowed Valspar products and applying new top coats, stains and sealers to the affected cabinets can be characterized other than as costs incurred in connection with the repair of a defective product. Even as to the cabinets which Superior replaced in their entirety, such action was merely the manner in which Superior chose to repair the defective Valspar products and such action was not taken as the result of any structural or other damage to the cabinet itself[5]. *See Hadar v. Concordia Yacht Builders, Inc.*, 886 F.Supp. 1082, 1096–97 (S.D.N.Y.1995)(under Massachusetts law, consequential damages to yacht caused by defective laminate are considered part of costs of repair and is purely economic). "Repair and Replacement costs are typical measures of economic loss". *Wausau Tile Inc. v. County Concrete Corp.*, 593 N.W.2d 445, 452 (Wis.1999). At the same time, there are circumstances under which repair and replacement costs can also be the appropriate measure of damage for "other property". *Id.* Therefore, the ultimate question remains whether the cabinets are "other property".

■ In determining whether a defective product has damaged other property, courts will look to whether the defective product was part of an integrated system: "[d]amage by a defective component of an integrated system to either the system as a whole or other system components is not damage to 'other property'". *Id.* In this case, it is difficult to fathom how the Valspar products consisting of stains, top coats and sealers can be characterized other than as integrated, indistinguishable components of the finished cabinets which were purchased by Superior's customers.

Superior argues under the circumstances of this case, that the relevant product on which this Court must focus is not the finished cabinet(s), rather it is the Valspar product(s) that were purchased by Superior. According to Superior, since it purchased the Valspar products and not the finished cabinets, as to it, the cabinets and the Valspar products cannot be considered integrated and the cabinets constitute "other property" which was damaged by the defective Valspar products. However, if I accept this argument, then Superior's claim fails because it did not own the property which was damaged. *See Star-Link Corn Products Liability Litigation v. Aventis CropScience USA Holding, Inc.*, 211 F.Supp.2d 1060, (N.D.Ill.2002) (plaintiff cannot rely on harm to property belonging to other people to show non-economic injury; plaintiff must have ownership interest in property); *cf. American Specialty Systems, Inc. v. Chicago Metal-*

---

5. In a supplemental brief to this Court on the economic loss issue, Superior argues that Valspar's own warranty recognizes that wood to which its products is applied may be damaged if its products are defective. Furthermore, in its submissions to this Court in opposition to Valspar's motion for summary judgment, Superior repeatedly states that numerous cabinets and/or cabinet systems on which it used Valspar products have been damaged. However, nowhere in its submissions does Superior specify how the wood or other cabinet surfaces themselves were damaged. Superior merely alleges that the cabinets yellowed, peeled and flaked. This allegation does not further Superior's argument since it is the Valspar products that were applied to the cabinets which yellowed, peeled and flaked.

*lic Corp.*, No. 01 C 4609, 2002 WL 406965 (N.D.Ill. Mar. 15, 2002).[6]

Superior also argues that Massachusetts courts have not addressed whether privity is required for warranty actions between commercial parties that are tort rather than contract based and since its action against Valspar sounds in tort, it should not be subject to a privity requirement. Assuming that Massachusetts courts would relax the privity requirement for tort based warranty claims between commercial parties, Superior's argument fails because, for the reasons set forth below, the nature of its dispute with Valspar sounds in contract.

■ Superior seems to base its contention that its breach of warranty action sounds in tort rather than contract on the same argument that it makes in support of its contention that it did not suffer only economic damages, that is, that the Valspar products damaged other property. However, assuming that the cabinets/cabinet systems are other property, actions for damages to other property can implicate either tort or contract policies and for that reason, the focus once again must be on the nature of the claimed defect, *i.e.*, the Valspar products tendency to yellow, peel and flake. Superior purchased the Valspar products and applied them to the cabinets anticipating that they would not yellow, peel or flake. That the Valspar products failed to perform as anticipated implicates the parties's expectation of the bargain, which sounds in contract. The failure of the Valspar products to perform as anticipated did not cause risk to persons. If it did, then tort policies would be implicated. The risk, if Valspar's products did not perform as intended, i.e., if they yellowed, peeled or flaked, was foreseeable and was something that commercial parties bargaining at arms length could address, again implicating a contract theory of recovery. Under these circumstances, I find that Superior's warranty claims are contract based.

■ For the reasons set forth above, I find that there is a lack of privity between Superior and Valspar and that because Superior is not in privity with Valspar, it cannot recover under its warranty claims to the extent it is seeking to recover economic losses. I further find that the only damages which Superior has alleged are purely economic losses. Therefore, summary judgment shall enter for Valspar on Superior's breach of warranty claims.[7]

*Whether Valspar is Entitled to Summary Judgment on Superior's Negligence Claim*

■ Valspar argues that it is entitled to summary judgment on Superior's negligence claims because, like breach of war-

6. At the hearing, I inquired of Superior's counsel who owned the cabinets. Superior's counsel responded that at least as to some of the cabinets, the yellowing, etc. was so extensive, Superior was forced to replace them with new cabinets. Apparently, Superior's theory is that it became the owner of the cabinets which had to be replaced (Superior does not explain how under this theory it can be said to have owned the cabinets it repaired rather than replaced.) This theory, while facially logical, simply lacks the substance necessary to withstand even the most modest scrutiny. The inevitable conclusion is that replacing the cabinets/cabinet systems was simply the method that Superior chose to repair those cabinets/cabinet systems where the yellowing, flaking and peeling of the Valspar products was extensive. The costs incurred in connection with such repairs are classic economic losses.

7. Because I have found that Valspar's breach of warranty claims are barred for lack of privity, it is not necessary for me to address Valspar's argument that all of Superior's breach of warranty claims that accrued prior to April 20, 1996 are barred by the statute of limitations.

ranty claims, negligence claims for economic loss are barred in the absence of personal injury and damage to other property. For the same reasons that it argued that it did not suffer purely economic losses for purposes of its breach of warranty claims, Superior argues that it did not suffer purely economic losses for purposes of its negligence claims. Superior further argues that Massachusetts law recognizes an exception to the economic loss doctrine for economic losses arising from negligent misrepresentations. Therefore, even if this Court were to find that Superior suffered only economic losses, it would still be entitled to pursue its tort claim for negligent misrepresentation.

I have already determined that the losses for which Superior seeks to recover against Valspar are purely economic. Therefore, Superior's negligence claims are barred unless Superior has alleged a viable claim for negligent misrepresentation and Massachusetts courts recognize an exception to the economic loss doctrine for such claims.

■ Generally, Massachusetts law recognizes an exception to the economic loss doctrine for economic losses resulting from negligent misrepresentations. *See Nota Constr. Corp. v. Keyes Assoc.*, 45 Mass.Ct. 15 (1998). However, it remains unclear whether "Massachusetts courts would apply the 'economic loss doctrine' ... to preclude claims of negligent misrepresentation as to the viability of products made in a commercial setting to induce the purchase of products where the product is subject to warranties". *Cummings v. HPG Intern. Inc.*, 244 F.3d 16, 23–24 (1st Cir.2001). Valspar argues that even if Massachusetts would recognize an exception to the economic loss doctrine for negligent misrepresentation claims, it is entitled to summary judgment because Superior has failed to assert such a claim

against it, nor has it alleged any conduct by Valspar which would constitute a negligent misrepresentation. At the August 28, 2002 status conference, I requested that the parties further brief the following issues: 1) whether Superior has alleged a claim for negligent misrepresentation against Valspar in its Complaint; and 2) if not, whether at this stage of the proceedings, Superior should be permitted to further amend its Complaint to assert such a claim. Assuming that Superior has alleged such a claim or would be permitted to further amend its Complaint to assert such a claim, I also asked the parties to brief whether: 1) under the circumstances of this case, Massachusetts would recognize an exception to the economic loss doctrine with respect to a claim for negligent misrepresentation; and 2) Superior has alleged sufficient facts to establish such a claim.

In its supplemental brief on these issues, Superior argues that: it has alleged a claim for negligent misrepresentation; if this Court determines that it has not alleged such a claim, then Valspar will not be prejudiced if it is permitted to further amend its Complaint to assert such a claim; under the circumstances of this case, Massachusetts would recognize an exception to the economic loss doctrine for negligent misrepresentations made by Valspar; and it has alleged sufficient facts to support a claim for negligent misrepresentation. Not surprisingly, Valspar's position is diametrically opposed to that of Superior's on all of these issues.

For purposes of this Memorandum and Order, I will assume that Massachusetts would recognize an exception to the economic loss doctrine for negligent misrepresentation claims made in connection with products purchased in a commercial setting. The question then becomes whether Superior has alleged such a claim and, if

so, whether there are sufficient facts in the record to support such a claim. If I determine that Superior has not alleged a negligent misrepresentation claim, then I must determine whether Superior should be permitted to further amend its Complaint to do so.

■ Valspar asserts that Superior's Complaint simply cannot be read to allege the essential elements of a negligent misrepresentation claim.

Massachusetts courts have held that in order to recover for negligent misrepresentation, a plaintiff must show that the defendant: (1) in the course of its business, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance upon the information, and (6) that it failed to exercise reasonable care or competence in obtaining or communicating the information.

*Cummings*, 244 F.3d at 24. The "degree of culpability a plaintiff must prove to establish liability for negligent misrepresentation" is mere negligence, that is, the plaintiff must establish that the defendant was "negligent in failing to discover the falsity of [its] statements". *Id.*, at 24, 25.

■ In its Complaint, Superior alleges only that Valspar "was negligent by selling defective products to the plaintiff" and that as a result of that negligence, Superior was damaged. *Complaint*, at p. 5. Furthermore, Superior did not in its Complaint allege any facts which would support a claim for negligent misrepresentation: there were no allegations that Valspar made any false statements concerning its product and there were no allegations that Superior relied on any representations made by Valspar. Under this Court's rules of procedure, a complaint must give the defendant fair notice of what the plain-

tiff's claim is and the grounds upon which such claim rests. *See* Fed.R.Civ.P. 8. Furthermore, while the allegations of the complaint are construed favorably to the plaintiff, the court will not read causes of action into the complaint which are not alleged. Even under this Court's liberal notice pleading requirements, the allegations set forth in Superior's Complaint are insufficient to state a claim for negligent misrepresentation.

If this were a motion to dismiss for failure to state a claim for negligent misrepresentation, I would have no choice but to grant such motion. However, Valspar filed a motion for summary judgment and in response to that motion, Superior has asserted that it is alleging a negligent misrepresentation claim and has asserted facts which it argues supports such a claim. The parties have extensively briefed the issue of whether Superior has in its pleadings and other submissions asserted sufficient facts to establish such a claim and both parties have submitted supplemental briefs setting forth the facts and legal analysis which they argue support their positions. Given this Court's liberal amendment standards and the fact that I do not believe that Valspar would be prejudiced by the assertion of such a claim at this stage in the proceedings, were Superior to seek to further amend its Complaint, that motion would, in all likelihood, be allowed. Under these circumstances, I will assume for purposes of this Memorandum and Order that Superior has alleged a claim for negligent misrepresentation and address whether Valspar is entitled to summary judgment with respect to that claim.

■ Superior argues that Valspar's data sheets and promotional materials "boasted" that the Valspar products (both the Superguard and Chemveer lines) were

non-yellowing; that the statements contained in such materials were representations; that such representations were false; and that Valspar was negligent in making such representations, because its own testing showed that the products yellowed.

As to the Superguard products, none of the materials to which Superior cites in support of this claim purport to represent that the products are non-yellowing. Presumably, as to these products, Superior is arguing that Valspar's misrepresentation was the failure to warn users that these products might yellow. As to the Chemveer products, the data sheets concerning these products did state that one of the advantages of this line of products was its "non-yellowing" properties. Additionally, Ron Knoper of Valspar recommended these products to Superior because Superior had complained that the Superguard products were yellowing. Superior asserts that it relied on these representations. Superior also asserts that as to the Superguard products, Valspar's own testing showed that such products yellowed over time. All of the Valspar products have proven to yellow over time. Therefore, for purposes of this Memorandum and Order, I will assume that: Valspar represented that all of the products used by Superior would not yellow; Superior relied on this representation; and the products yellowed. However, in order to establish its negligent misrepresentation claim, Superior must also prove that Valspar knew, or reasonably should have known, that the representations were false *at the time they were made.*

With respect to the Chemveer products, the only facts which Superior points to in order to establish that Valspar knew that these products yellowed were that Valspar started adding UV absorber to those products in 1998–99. However, the alleged representations were made to Superior in 1995. Superior has not cited any evidence which would support a finding that Valspar knew or should have known that the Chemveer products would yellow when they were recommended to Superior in 1995.

With respect to the Superguard products, Superior asserts that Valspar's own testing showed that the products yellowed. In support of this contention, Superior has provided an undated copy of test results obtained by Valspar on the Superguard products which show that such products yellowed over time. *See Kenney Aff.,* at *Ex. 12.* This document does not state when the test was performed. However, in its supplemental submission, Valspar provided a copy of its consultant's report which indicates that the test was performed in 1995, which is well after Superior purchased the Superguard products. As is the case with the Chemveer products, on the record before me, Superior has failed to allege facts which would support a finding that at the time that the Superguard products were sold to it, Valspar knew or should have known that such products would yellow. Therefore, Valspar is entitled to summary judgment on Superior's claim for negligent misrepresentation with respect to the Superguard products.

For the reasons set forth above, Valspar's motion for summary judgment is allowed with respect to Superior's negligence claims, including any claims Superior may have for negligent misrepresentation.

*Whether Valspar Is Entitled To Summary Judgment On Superior's Chapter 93A Claim.*

Valspar asserts that the basis for Superior's Chapter 93A claim is that Valspar breached a warranty to Superior. Therefore, Valspar argues that if this Court

determines that it is entitled to summary judgment on Superior's breach of warranty claims, then as a matter of law, it is entitled to summary judgment on Superior's Chapter 93A claim. Superior, on the other hand, argues that even if this Court enters summary judgment for Valspar on its breach of warranty claims, there remains a genuine issue of material fact as to whether Superior engaged in unfair and deceptive acts and practices for which it may be liable under Chapter 93A.

Although "Massachusetts courts have generally held that the economic loss doctrine does not bar recovery in actions brought under Chapter 93A", *Cummings*, 244 F.3d at 26 n. 3, there is authority to the contrary. *See Canal Elec. Co. v. Westinghouse Elec. Co.*, 973 F.2d 988, 998–99 (1st Cir.1992)(Absent showing of special circumstance such as intentional tortious conduct by defendant, Chapter 93A claim fails where claims underlying such cause action are negligent and warranty based claims for economic loss). However, I need not resolve this issue. I have found that Valspar is entitled to summary judgment with respect to Superior's breach of warranty claims as well as all negligence claims asserted by Superior. Furthermore, I find that Superior has failed to allege any facts which would support an independent a finding that Valspar engaged in any unfair or deceptive acts or practices in connection with the sale of Chemveer or Superguard products to Superior. Therefore, I am allowing Valspar's motion for summary judgment with respect to Superior's Chapter 93A claim.

### Conclusion

Defendant's Motion For Summary Judgment (Docket No. 34) is *allowed.*[8]

---

8. This motion was filed by Valspar as to the claims asserted against it by Superior. Valspar remains in this case as a Defendant with respect to the cross-claims asserted against it by Raybern.

Counsel for all parties shall appear on May 19, at 10:00 a.m., at the United States District Court, Courtroom No. 1, 5th Floor, Worcester, Massachusetts, for a motion hearing/status conference.