Joseph Danca & another *vs.* Taunton Savings
Bank & others
(and a companion case).

Bristol. September 16, 1981. — January 7, 1982.

Present: Hennessey, C.J., Wilkins, Liacos, Abrams, & Lynch, JJ.

*Damages*, Deceit, Negligent misrepresentation. *Consumer Protection Act*,
Mortgage of real estate. *Sale. Loan. Mortgage*, Real estate. *Deceit*.

The rule that a home mortgage transaction is not a purchase of property
within the meaning of the Consumer Protection Act was not affected
by a mortgagee bank's involvement in a construction loan on the mort-
gaged property or by the bank's requirement that, in connection with
the mortgage transaction, the mortgagor purchase a plot plan pro-
cured by the bank. [5-7]
Where it appeared that applicants for a mortgage loan were told by an
officer of a bank that the bank required a plot plan in order to verify
compliance with the town's zoning by-law, that the bank ordered the
plan from an engineering firm and the plan was delivered to the bank,
that at the closing an officer of the bank, in response to a request by the
mortgagors for a copy of the plan, told them the plan was not in the
file but a copy would be sent to them, and that the mortgagors subse-
quently discovered that the plan disclosed violations of the zoning by-
law, the bank was liable to the mortgagors for negligently misrepre-
senting that the plan would disclose no irregularities. [7-8]
In an action for negligent misrepresentation, the measure of damages is
the difference between the value of what the plaintiffs received and
the purchase price, plus any other pecuniary loss suffered as a conse-
quence of their reliance on the misrepresentation. [8-10]

Damages suffered by mortgagors as a result of negligent misrepresenta-
tion by the mortgagee bank were not a defense to an action brought by
the bank against the mortgagors for a deficiency judgment after a
foreclosure sale, although the bank's negligence could be asserted as a
counterclaim. [10]

CIVIL ACTIONS, one filed in the Superior Court on April
20, 1976, and one in the First District Court of Bristol on
February 4, 1978.

Upon removal of the second case to the Superior Court,
the cases were heard by *Chmielinski, J.*

After review was sought in the Appeals Court, the Su-
preme Judicial Court ordered direct appellate review on its
own initiative.

*John S. White* for Taunton Savings Bank.

*Ben D. Lewis* for Joseph Danca & another.

LYNCH, J.  This case involves two different actions.  The
first action was begun by Joseph and Janice Danca[1] on April
20, 1976, against the Taunton Savings Bank and Joseph J.
Crowninshield.[2]  In their amended complaint, the plain-
tiffs stated causes of action against the defendant bank
based on negligence, fraud, and violations of G. L. c. 93A,
§ 2, arising from the defendant bank's handling of a mort-
gage loan on property belonging to the plaintiffs in Rayn-
ham.  On September 29, 1978, after a jury-waived trial, the
Superior Court judge entered judgment for the plaintiffs
with accompanying findings of fact and conclusions of law.
The judge concluded that the defendant bank had been
negligent and had wilfully violated G. L. c. 93A.  The
plaintiffs were awarded damages in the amount of $21,841.26

---

[1] The Dancas were apparently subsequently divorced. Janice Danca,
now Janice Danca Kutosh, was living in New York as of February 4,
1978.

[2] On October 6, 1976, the plaintiffs moved to add as defendants Hutch-
inson Co., Inc., Raymond A. Tedeschi, and Joseph J. Crowninshield, Jr.
This motion was allowed on October 12, 1976.  The claims against these
defendants and against Joseph J. Crowninshield were settled before trial
for $6,000.00.

under the treble damage provision of G. L. c. 93A, § 9 (3), plus counsel fees under § 9 (4).

The second action is a suit for a deficiency judgment after a foreclosure sale filed by the Taunton Savings Bank against Joseph Danca and Janice Danca Kutosh on February 4, 1978. This action was heard together with the Dancas' claims against the bank and a judgment was rendered, also on September 29, 1978, dismissing the action.[3] There were appeals from both judgments and the appeals were transferred to this court on our own motion. We remand the cases to the Superior Court for further proceedings not inconsistent with this opinion.

These actions arose from the plaintiffs' purchase of Lot 8 of Country Squire Estates on Leonard Street, Raynham (Lot 8). On or about July 28, 1973, Lot 8 was sold by its then owner, HOS Engineering Associates, Inc., to one Robert Seemann. Robert Seemann operated a real estate partnership with his father, George Seemann, who was a member of the board of investment of the defendant bank. Among other duties, the members of this board inspected properties for which loan applications had been made and voted on whether to grant loans.

During July, 1973, an application for a permit to build a home on Lot 8 was submitted to the Raynham building department. The application was accompanied by a plan drawn by HOS Engineering Associates, Inc., showing the

---

[3] On March 14, 1978, Joseph Danca filed a motion to remove the bank's action to the Superior Court and consolidate it with the Dancas' action against the bank. The action was removed to the Superior Court on March 28, 1978, but the two cases were apparently never formally consolidated. The bank filed a motion to vacate the judgment in the deficiency action claiming that it could not be reduced to judgment due to the failure to consolidate. The trial judge denied this motion after a hearing and the bank appealed. We find no basis for upsetting the judgment on this ground. Under the circumstances the trial judge's denial of the motion amounted to a finding that the two cases were in fact tried together. In any event, the defendants have failed to make any showing of prejudice stemming from the failure of the trial judge to enter a formal order of consolidation under Mass. R. Civ. P. 42 (*a*), 365 Mass. 805 (1974).

proposed location of the home. The plan indicated compliance with Raynham's zoning by-law.

On December 6, 1973, Robert Seemann sold Lot 8 to Joseph J. Crowninshield, d/b/a Shannon Builders, Inc. In 1974, Raymond Tedeschi, a real estate broker in the employ of Hutchinson Co., Inc., showed Lot 8 to the plaintiffs, Joseph and Janice Danca. The plaintiffs agreed to purchase Lot 8 and the house on it from the builder, Joseph J. Crowninshield, for $35,900.00.[4]

On September 6, 1974, the plaintiffs filled out an application for a mortgage loan of $28,900.00 with the bank. They were told by the bank's mortgage officer and vice-president, Belcher W. Stanley, Jr., that the bank required a plot plan in order to verify that the location of the house on the lot complied with the town's zoning by-law. The plaintiffs were charged twenty-five dollars for this plan. The bank ordered the plan on September 20, 1974, from Hayward-Boynton & Williams Inc., registered engineers, and the plan was hand delivered to the bank ten days later.

At the closing on October 4, 1974, the plaintiffs asked Stanley for a copy of the plot plan to satisfy themselves that the house was correctly located on Lot 8. Stanley responded that the plan was not in the file but would be sent to the plaintiffs. When the plot plan was received by the plaintiffs on October 20, 1974, they discovered that it disclosed violations of Raynham's zoning by-law. The location of the house violated both the front and side yard set back requirements of the by-law. The trial judge found that the plaintiffs would not have purchased the property if they had had this information at the closing.

---

[4] There are indications in the record that the purchase price was actually $34,900.00, that the price of $35,900.00 was given to the bank in order to qualify the plaintiffs for a mortgage, and that the bank was never told that the plaintiffs gave the builder a second mortgage in order to acquire the down payment they needed. The bank does not claim that the property was not worth $35,900.00 and we reject any suggestion in the bank's brief that this discrepancy in the purchase price somehow absolves them from any liability in connection with their handling of a different part of the loan transaction.

After discovering the defects disclosed by the plot plan, the plaintiffs went to see bank officials. Efforts to resolve the problem proved fruitless and the plaintiffs moved out of the house on December 20, 1975.

The plaintiffs attempted for two years to resolve their differences with the bank but no resolution was reached. Through their attorney the plaintiffs sent several written demands for relief to the bank, but the bank never made a tender of settlement under G. L. c. 93A, § 9 (3). The judge found the bank negligent in failing to disclose to the plaintiffs at the closing the plot plan it had in its possession. He also found a wilful violation of G. L. c. 93A. The basic damages found by the judge, before trebling, consisted of: the cash down payment and amounts paid on the mortgage (including principal, interest and taxes) through December 16, 1975; costs associated with the closing; moving expenses; money expended in decorating, landscaping, and insuring the home; and the cost of installing telephones. From total basic damages of $9,980.42 the judge deducted $2,700.00 representing the value of the plaintiffs' occupancy of the house, for net actual damage of $7,280.42.

The bank made a peaceful entry onto Lot 8 in January of 1976, foreclosed, and sold the property at a foreclosure sale pursuant to a power of sale contained in the mortgage agreement. The bank purchased the property at the sale for $21,000.00. Thereafter the bank sought a zoning variance from the Raynham board of appeals in order to sell the house as it was located. When this variance was denied, the bank sold the property for $22,000.00 to a contractor who was able to relocate the house and thus make it saleable.

The plaintiffs paid the mortgage installments promptly until it was clear settlement was impossible. All through the foreclosure proceeding the bank knew that it had failed to disclose the improper location of the house to the plaintiffs and that the plaintiffs would be unable to protect themselves from loss by reselling the property.

1. *Applicability of G. L. c. 93A.* In *Murphy* v. *Charlestown Sav. Bank*, 380 Mass. 738 (1980), this court held that a

conventional home loan mortgagor was not within the class of plaintiffs entitled to pursue a civil remedy under the provisions of G. L. c. 93A, § 9, in effect prior to October 18, 1979. Under that statute only a person who "purchase[d] or lease[d] goods, services or property, real or personal primarily for personal, family or household purposes" could bring a private suit for violations of § 2 of c. 93A. In *Murphy* the court rejected the plaintiffs' argument that a mortgagor is a "purchaser" of the use of money, noting that the plaintiffs failed to cite any authority for such a characterization. *Id.* at 743-745. Furthermore, upon a review of "[a]nalogous statutory material" (specifically, provisions of the Uniform Commercial Code, the Federal Consumer Protection Act, and its Massachusetts counterpart, G. L. c. 140C) the court found no support for the plaintiffs' contention. *Id.* at 746-749. Rather, this review disclosed a widespread assumption that there was a distinction between a "loan" and a "sale" or "purchase." In these circumstances, home loan mortgagors were not "purchasers of property" under c. 93A, § 9 (1).

The plaintiffs here seek to distinguish the *Murphy* decision on the ground that the defendant Taunton Savings Bank also held the construction loan on the house purchased by the plaintiffs and thus arguably had a special interest in securing a buyer for the property so that the builder would be able to pay off the construction mortgage. This distinction is without legal significance. The holding in *Murphy* was that a home mortgage is not a "purchase of property." It is hard to see how this conclusion could be changed by the additional fact of the mortgagee bank's involvement as a construction lender. The plaintiffs also argue, however, that they qualify as "purchasers" of the plot plan because their cause of action under c. 93A is based upon bank misconduct in procuring the plot plan rather than misconduct in connection with the loan transaction itself or the subsequent foreclosure. The *Murphy* opinion did not foreclose this argument. *Murphy, supra* at 746 n.12.

At first glance, the purchase of a plot plan in connection with a mortgage transaction might be regarded as meeting the requirements of § 9. Upon reflection, however, we do not think that the essential character of the transaction is so changed that the loan of money secured by a real estate mortgage becomes subject to c. 93A simply because the mortgagee bank requires the mortgagor to produce a plot plan and arranges for the preparation and procurement of that plan at the mortgagor's expense but without profit to the bank. The plaintiffs concede that the plot plan purchase was inextricably interwoven with the mortgage loan but seek to characterize the purchase of the plot plan as a condition precedent to the completion of the mortgage loan. This argument ignores the role of the bank in the plot plan purchase. The bank neither prepared the plan nor profited from its sale to the plaintiffs. It required that a plan be furnished and took steps to ensure that the plan would be available at the time of closing, passing the twenty-five dollar charge on to its mortgagors. In these circumstances it would appear that the bank was acting as agent for its mortgagors in the purchase of the plot plan. The judge's findings made clear that the twenty-five dollar charge for the preparation of the plan would go to the engineers who prepared the plan and not to the bank. The purchaser and seller relationship that might give rise to a c. 93A claim, therefore, did not arise out of the plot plan transaction between the bank and the Dancas. The "sellers" in this sense were the engineers who prepared the plan. In any case, the bank's activities in connection with the procurement of this plot plan did not so change the character of its relationship with its mortgagors that the *Murphy* decision becomes distinguishable. The plaintiffs were not entitled to recover under the provisions of G. L. c. 93A and, therefore, were not entitled to recover treble damages.

2. *Alternative basis for recovery.* Although the plaintiffs are not entitled to recover under G. L. c. 93A, the judge found the bank negligent in failing to disclose to the plaintiffs the plot plan for which they had paid and which the

bank had in its possession at the time of the closing. The judge also found that the plaintiffs would not have proceeded with the sale had the contents of the plot plan been disclosed to them before they closed. These findings were amply supported by the evidence. The judge further determined that "the plaintiffs were deprived of their bargain" by the defendant bank and awarded damages under the rule of *Rice* v. *Price*, 340 Mass. 502 (1960). The *Rice* case approved the "benefit of the bargain" rule as the measure of damages in "appropriate" actions based upon deceit, i.e., fraudulent misrepresentation. In cases where it applies, this measure of damages would be the difference between the value of the relevant property as represented and its actual value at the time of misrepresentation. *Id.* at 507. This rule could result in a plaintiff's recovering a different sum than would be possible under an "out-of-pocket" rule, the traditional rule of damages in tort actions. *Id.* at 507 n.4. The benefit of the bargain rule, however, has heretofore been applied only in actions of deceit. In a deceit action, the plaintiff must prove "that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage." *Barrett Assocs.* v. *Aronson*, 346 Mass. 150, 152 (1963), quoting from *Kilroy* v. *Barron*, 326 Mass. 464, 465 (1950). *Alpine* v. *Friend Bros.*, 244 Mass. 164, 167 (1923).

The judge's reference to *Rice* v. *Price, supra*, suggests that he may have felt the plaintiffs had made out an alternative case for recovery based upon deceit. We need not decide whether the facts of this case would support a recovery on this ground because there is another ground on which the bank can be held liable for creating the impression that all was in order when, in fact, it was not. The judge's finding of negligence establishes a case for recovery by the plaintiffs on the ground of negligent misrepresentation. Cf. *Craig* v. *Everett M. Brooks Co.*, 351 Mass. 497, 499 (1967) (alleged negligence in making plans of a real estate development

analyzed as case of negligent representations). The conduct and words of the bank officials who handled the plaintiffs' closing amounted to a representation to the plaintiffs, negligently made, that the plot plan disclosed no irregularities and that the plaintiffs could safely close without having seen it.

Deception need not be direct to come within the reach of the law. It is enough that the representation was reasonably understood as a statement that the bank employees had looked at the plan and found no problems. *Boston Five Cents Sav. Bank* v. *Brooks*, 309 Mass. 52, 55-56 (1941). When the defendant's response to the plaintiffs' inquiry concerning the plot plan is considered within the context of the bank's stated policy of requiring plot plans in order to avoid becoming involved in zoning violations, certainly the plaintiffs could reasonably have attributed this meaning to the words used.

Although no Massachusetts case discusses the applicable measure of damages in actions for negligent misrepresentation, the Restatement (Second) of Torts § 552B (1) (1977), appears to us to state the correct rule. Under § 552B (1), the plaintiffs would be entitled to recover damages equal to the difference between the value of what they received and the purchase price plus any other pecuniary loss suffered as a consequence of their reliance on the misrepresentation. See J.R. Nolan, Tort Law § 116 (1979). "Benefit of the bargain" damages are not recoverable. Restatement (Second) of Torts § 552B, Comment *b* at 141. Comment *a* to § 552B incorporates the explanation of out-of-pocket loss (the first element of damages recoverable for negligent misrepresentation) contained in § 549 (1) of the Restatement. The value of what was received is defined as the price at which the property could be resold if its true quality were known. Restatement (Second) of Torts § 549, Comments *c* at 110 and *d* at 112 (1977). Consequential damages include those that might reasonably be expected to result from reliance upon the misrepresentation. Section 549, Comment *d* at 112. Since the judge never used the term "negligent misrepresentation," it may be that he conceived of the case as a

typical negligence action. In any case, the damages award-
ed do not appear to be based upon pecuniary loss caused to
the plaintiffs by their reliance on false or misleading infor-
mation.

If damages were awarded under the rule applicable to
negligent misrepresentations, the amount which the bank
sought to recover from the plaintiffs in the deficiency action
might well be comprehended in an award to the plaintiffs of
the difference between the price they paid for Lot 8 and its
actual value with zoning violations.[5] The judge may have
reached the same result by awarding the plaintiffs essen-
tially restitutional damages in their own action and then
holding that the bank's negligence provided the plaintiffs
with a defense to the bank's deficiency action. This latter
holding, while it may be an appealing resolution here, is in-
consistent with the law of contracts since "negligence" is not
a defense to an action on a contract, however appropriately
it might be asserted as a counterclaim.

The plaintiffs are entitled to be compensated for all their
pecuniary loss incurred as a result of reliance upon the mis-
representation. The trial judge should be alert to the fact
that the plaintiffs received $6,000 from the settlement of
the suits against the other defendants. See note 2, *supra*.
The judge should determine whether the plaintiffs' action
against these other defendants sought compensation for the
same losses which they seek to recover from the bank. If
this is the case, the plaintiffs should not be allowed to re-
cover this $6,000 twice.

Finally, we note that the trial judge awarded the plain-
tiffs attorney's fees under G. L. c. 93A, § 9 (4). Our holding
that c. 93A does not apply to this case makes an award of at-
torney's fees under this provision inappropriate. The trial
judge did find as a fact that the plaintiffs were forced to de-

---

[5] On October 4, 1974, when the plaintiffs bought Lot 8 and the house
on it, the value of the property with zoning violations was, of course, not
necessarily the same as the price for which the bank bought it at the fore-
closure sale over three years later, on January 6, 1978.

fend a suit brought by neighbors on whose land portions of the plaintiffs' home encroached and the record indicates that a portion of the award of attorney's fees was intended to compensate the plaintiffs for expenses incurred in defending this action. The plaintiffs have not argued before this court that this portion of the counsel fees could be upheld as an element of damage. See *Harrison* v. *Textron, Inc.,* 367 Mass. 540, 554-555 (1975); *M. F. Roach Co.* v. *Provincetown,* 355 Mass. 731 (1969); *Chartrand* v. *Riley,* 354 Mass. 242 (1968). We, therefore, do not reach this issue although the judge should consider it on remand if it is raised by the plaintiffs.

We remand the cases to the Superior Court for further proceedings not inconsistent with this opinion.

*So ordered.*