## Epstein v. Goldome FSB

*Vincent B. Mancini,* for plaintiffs.
*John Francis Gough,* for defendant.

PRESCOTT, *J.,* March 6, 1987 — Plaintiffs, Harold Epstein and Beverly Epstein, his wife, and defendant, Goldome FSB (a federal savings bank), have each filed a motion for summary judgment. The issues raised by the aforesaid motions are:

(1) Whether the exercise of a due on sale clause in·a mortgage prohibits the mortgagee's right to contemporaneously impose a prepayment charge on the mortgagor;

(2) Whether plaintiffs are entitled to treble damages against defendant pursuant to the Unfair Trade Practices and Consumer Protection Act, 73 P.S. §201-1 et seq.

This opinion is written in disposition of the aforesaid motions and the issues raised thereby.

The facts of the case are as follows:

Prior to November 14, 1983, plaintiffs were the owners of certain real estate known as Robindale Apartments situated in Haverford Township, Delaware County, Pennsylvania. Said real estate was subject to two mortgages, one dated June 14, 1963, and the second dated May 26, 1970. These mortgages were subsequently assigned to defendant, Goldome Bank, formerly known as Buffalo Savings Bank. By a "Consolidation and Modification Agreement" dated May 26, 1970, between plaintiffs and defendant (then known as Buffalo Savings Bank) the two mortgages in question were consolidated and modified.

The consolidated mortgage, by its terms, is a nonrecourse mortgage, i.e., the mortgage is secured by

the mortgaged real estate itself, without recourse to the personal assets of plaintiffs.

The consolidated mortage · also contains two clauses material to the issues before the court as follows:

(1) The Due-on-Sale Clause:

"It is also further understood and agreed that in the event the hereinabove described premises are sold or conveyed, the mortgagee, at its option, may declare the mortgage in default, and the principal balance then remaining unpaid, together with interest as provided in the bond and mortgage, to be immediately due and payable."

(2) The Prepayment Penalty Clause:

"The party of the first part, their heirs, executors, administrators and assigns, shall have the privilege of prepaying the full amount of the principal sum thereof then remaining unpaid, after the first five years of amortization, on giving to the holder of the bond, 30 days' written notice of their intention to do so, and paying to the holder of the bond, simultaneously with such notice, a prepayment consideration in a sum equal to five percent of the unpaid balance of the principal sum secured by the bond if such prepayment is made during the second five years of amortization; three percent during the third five years and two percent thereafter; except, however, the party of the first part shall have the privilege of paying an amount equal to 15 percent of the principal sum in any one year without penalty, which shall not be cumulative. It is understood and agreed that such prepayment consideration shall be in addition to principal and interest unpaid on the date that the prinicpal and interest are paid in full."

By an agreement dated February 16, 1983, plaintiffs agreed to sell the subject premises to a certain purchaser. On or about October 18, 1983, plaintiffs

forwarded a written request to defendant's agent, Fidelity Bond and Mortgage Company, inquiring whether defendant would permit the purchaser to take under and subject to the aforesaid consolidated mortgage which defendant held. By letter dated November 7, 1983, defendant notified plaintiffs that it would not authorize or permit the purchaser to assume the mortgage and/or take subject and under thereto.

By a statement dated November 10, 1983, defendant advised plaintiffs that the amount necessary to be paid in order to satisfy the consolidated mortgage loan would have to include a prepayment penalty of three percent of the outstanding principal balance as well as the outstanding balance due on the mortgage. The three percent prepayment penalty amounted to $19,402.19. Plaintiffs advised defendant that settlement on the sale of the subject property would be held on November 14, 1983, and that in order to complete settlement plaintiffs would pay the prepayment penalty "under protest and with full and complete reservation of rights."

Settlement on the subject premises was concluded and thereafter plaintiffs instituted the instant cause of action to recover the three percent prepayment penalty payment along with damages provided for under the Unfair Trade Practices and Consumer Protection Act, *supra*. After the pleadings were closed and discovery was completed, each party filed a motion for summary judgment seeking favorable relief.

As hereinbefore stated the first issue before the court is:

Whether the exercise of a due-on-sale clause in a mortgage prohibits the mortgagee's right to contemporaneously impose a prepayment charge on the mortgagor.

In the opinion of this court, the case of *Bell Savings and Loan Assn. v. Walkenstein,* 70 Delaware Rep. 512 (1983), affirmed mem., 345 Pa. Super. 612 (1985) is dispositive of this issue.

In that case, defendants executed a mortgage to the plaintiff bank which mortgage contained due on sale and prepayment penalty clauses essentially the same as those present in the case at bar. Five years thereafter, defendants negotiated a sale of the property to a third party who desired to assume the existing mortgage. Alternatively, if plaintiff bank did not agree to the mortgage assumption, defendants requested a pay-off statement be forwarded to them. In fact, plaintiff bank did not agree to the mortgage assumption but, rather, presented defendants and the third party purchaser with a pay-off statement which included a prepayment charge.

The court in *Bell Savings, supra,* held that it was improper to permit a mortgagee to exercise the due-on-sale clause contemporaneously with an exercise of the prepayment penalty clause. The reasoning of the court was that the language of the prepayment penalty clause clearly *makes the penalty payable only upon a debtor's exercise of the reserved privilege to prepay.* The debtor paid the balance of the loan not on account of their exercise of the privilege to prepay but, rather *on account of the bank's demand for full payment in connection with its exercise of the due-on-sale clause.*

The language of the subject clauses is clear and essentially the same as the language contained in the clauses in *Bell Savings, supra.* The facts in the instant case clearly demonstrate that defendant refused an assumption of the mortgage and demanded that the entire outstanding balance on the subject mortgage be paid at the time of settlement. By

so acting, defendant exercised its rights under the due-on-sale clause and, consistent with the holding in *Bell Savings, supra* this court finds that it was improper for the subject defendant to charge and collect a prepayment penalty in addition thereto. Therefore, this court concludes that plaintiffs are entitled to a refund of the prepayment penalty charge which they paid at the time of settlement.

This court has considered defendant's argument that federal banking rules and regulations permit the dual exercise of a due-on-sale clause and a prepayment penalty clause and that said federal rules should be applied to this case since defendant is *presently* a federally chartered bank. This court finds no merit in this contention because at the time the subject consolidated mortgage was created, defendant was a state corporation and a state bank. This court is not aware of, nor has defendant cited any authority which would permit the retroactive alteration of contractual terms upon the acquisition of federally regulated status by one of the contracting parties.

The second issue raised in this case is:

Whether plaintiffs·are entitled to treble damages against defendant pursuant to the Unfair Trade Practices and Consumer Protection Act, 73 P.S. §201-1 et seq.

Plaintiffs' contention on this point is that defendant acted in bad faith by refusing to allow an assumption of the mortgage which defendant held on plaintiffs' property. Plaintiffs' further contend that defendant acted in bad faith by exercising the prepayment penalty clause contained in the subject mortgage.

Section 201-9.2 of the act in question provides as follows:

"Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or $100, whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than $100, and may provide such additional relief as it deems necessary and proper."

This court has not found, nor have the parties hereto cited, any Pennsylvania authority construing the applicability of the subject statute to the type of transaction involved in this case. However, the courts of two other jurisdictions having statutes similar to the Pennsylvania statute presently under consideration have held as follows:

A loan is not the purchase or lease of goods or services but is the gaining of currency of exchange that enables the holder to acquire goods. See *Riverside National Bank v. Lewis*, 603 S.W. 2d 169 (Texas 1980) (construing the Texas Unfair Trade Practice Act which is limited to purchasers of goods and services). See also, *Murphy v. Charlestown Savings Bank*, 405 N.E. 2d 954 (Mass. 1980) (Massachusetts statute on unfair trade practice does not apply to a home mortgage); *Danca v. Taunton Savings Bank*, 429 N.E. 2d 1129 (Mass. 1982) (commercial construction loan was not a purchase of any good or property subject to Massachusetts statute).

In the opinion of this court, the Pennsylvania Unfair Trade Practices and Consumer Protection Act is inapplicable to the subject transaction. Plaintiffs borrowed money from defendant to finance an in-

vestment in a certain apartment complex. Plaintiffs secured the repayment of the loan by giving defendant a mortgage on the subject premises. There is no allegation made by plaintiffs that defendant deceived them in the formulation of this transaction.

Accordingly, in light of all the foregoing facts and legal authorities set forth above, this court has entered an order dated March 6, 1987, consistent with the conclusions reached in this opinion.

## ORDER

And now, March 6, 1987, after consideration of argument and briefs submitted by respective counsel, it is hereby ordered and decreed that:

(1) Plaintiffs' motion for summary judgment on count 1 of plaintiffs' complaint be and the same is hereby granted as follows:

Judgment is hereby entered in favor of plaintiffs, Harold Epstein and Beverly Epstein, his wife, against defendant, Goldome FSB, in the amount of $19,402.19, together with interest and costs. Plaintiffs' demand for attorney's fees and punitive damages is denied.

(2) Plaintiffs' motion for summary judgment on count 2 of the complaint be and the same is hereby dismissed;

(3) Defendant's motion for summary judgment on count 1 of plaintiffs' complaint be and the same is hereby dismissed;

(4) Defendant's motion for summary judgment on count 2 of plaintiffs' complaint be and the same is hereby granted, and count 2 of plaintiffs' complaint is hereby dismissed with prejudice.